THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DANIEL SUAREZ, JARMEN MIDWELL and GLORIA ARNALDI, Appellants.

First Department, December 27, 1979

## APPEARANCES OF COUNSEL

*Arlen S. Yalkut* for Daniel Suarez, appellant.

*Barry D. Leiwant* of counsel *(William E. Hellerstein,* attorney), for Jarmen Midwell, appellant.

*Joel A. Reiss* for Gloria Arnaldi, appellant.

*Robert M. Pitler* of counsel *(Phyllis M. Gershon* with him on

the brief; *Robert M. Morgenthau, District Attorney,* attorney),
for respondent.

### OPINION OF THE COURT

*Per Curiam.*

Felix Figueroa was robbed in Bryant Park, located near Fifth Avenue and 42nd Street in Manhattan. Daniel Suarez, Gloria Arnaldi, Jarmen Midwell, and Luther Brown were arrested and were ultimately convicted. Suarez, Midwell, and Brown were convicted of the crime of robbery in the second degree and acquitted, *inter alia,* of the crime of grand larceny in the third degree. Arnaldi was convicted of the crime of grand larceny in the third degree only.

At the trial, the People adduced testimony from the complaining witness and from two police officers who were on duty at the time of the robbery. The officers were stationed in the token-booth area of the subway station at Fifth Avenue and 42nd Street. The officers claimed to have seen defendants Arnaldi and Suarez taking the victim, Felix Figueroa, upstairs out of the subway station. The officers followed them but stayed a distance of about 50 feet away from the group. The officers saw Figueroa on the ground, and Arnaldi and Suarez were nearby. Arnaldi allegedly took Figueroa's watch from his hand while Suarez restrained Figueroa. A few minutes later, the defendants Midwell and Brown joined the group. Midwell sat by Figueroa's head, and Brown sat by Figueroa's knees. Midwell held a silver knife at Figueroa's throat. Suarez and Arnaldi then got up and walked towards 42nd Street and Seventh Avenue. Midwell and Brown started to walk towards the library. After the defendants left, Figueroa got up and was intercepted by the two officers who were in plain clothes. After they identified themselves, Figueroa said that he had been robbed, and that his watch and wallet had been taken from him. Arnaldi and Suarez were arrested, and in Arnaldi's possession was one watch engraved with Figueroa's name on the back. In Arnaldi's pocketbook Figueroa's leather wallet was found containing his personal papers. Midwell and Brown were arrested shortly thereafter in a different section of the park.

The testimony of the defendant Suarez at the trial was that he had been walking along 42nd Street when he saw someone lying at the curb near Seventh Avenue. He walked towards the person and asked a woman who was nearby to help him.

The woman, whom Suarez had never met before, was later identified as the defendant Arnaldi. They both picked up Figueroa, put their arms around him, and walked him over to Bryant Park where they rested him on the grass. Nearby they saw two black men sitting on the grass. They were identified at the trial as Brown and Midwell. While in the park, Suarez and Arnaldi had struck up a conversation and left the park together, developing their newly found acquaintanceship.

Julio Suarez, the brother of the defendant Suarez, testified that on the morning of his brother's arraignment on this matter, Felix Figueroa, the complainant, admitted to him that he did not know what had happened on the previous afternoon, and he admitted that he was drunk all the time that this was taking place. An investigator employed by the Legal Aid Society testified further that Figueroa told him that the robbery took place while he was walking in Bryant Park on his way *to* the subway. The jury heard these conflicting stories and convicted the defendants Suarez, Midwell, and Brown of the crime of robbery in the second degree.* The defendant Arnaldi was convicted of the crime of grand larceny in the third degree.

■ ■ We would reverse the conviction of the defendants Suarez and Midwell, and affirm the conviction of the defendant Arnaldi. The testimony of the police officers included, on cross-examination, the fact that one officer, while seeing the three—Figueroa, Arnaldi, and Suarez—walking together, did not think that a crime was being committed or that Figueroa was being held against his will. The other officer stated that at no time did he observe any crime being committed, and his only knowledge of the alleged crime came from the complaining witness, Mr. Figueroa. This is coupled with the fact that Figueroa's testimony was that he was walking to (rather than from) the subway station in which the two police officers were stationed.

■ It would appear from a review of the evidence that there was insufficient to show that the defendants Suarez and Midwell committed any crime whatsoever, and therefore the judgment of conviction as to them should be reversed. Assuming for the sake of discussion that there was sufficient credible evidence from which the jury could conclude that the defen-

---

* The appeal of the defendant Brown was dismissed by order of this court after the defendant had absconded and was therefore not subject to the jurisdiction of the court. The judgment of conviction as to him, therefore, should not be disturbed.

dants did participate in a crime, nonetheless the judgment of conviction as against these two should be reversed on the grounds that the verdict is repugnant. The jury found that these two defendants were guilty of the crime of robbery, though they were found not guilty of the crime of larceny, which is an essential element of the crime of robbery (see *People v Carbonell,* 40 NY2d 948).

■ However, with regard to the defendant Arnaldi, the result is quite different, in view of the fact that she was convicted of the crime of grand larceny. When she was arrested she was in possession of the watch and the wallet of the victim, Figueroa, and had no valid explanation for their being under her control.

Accordingly, the judgment of conviction against the defendant Suarez, rendered January 26, 1976 (SCOTT, J.), after a jury trial, should be reversed, on the law and the facts, and the indictment should be dismissed. The judgment of conviction of the defendant Midwell, rendered January 27, 1976 (SCOTT, J.), after a jury trial, should be reversed, on the law and the facts, and the indictment dismissed. The judgment against the defendant Arnaldi, rendered January 26, 1976 (SCOTT, J.), after a jury trial, should be affirmed, without prejudice to a motion for resentence.

BLOOM, LANE and ROSS, JJ., concur; SANDLER, J. P., and SILVERMAN, J., concur in result only.

Judgment, Supreme Court, New York County, rendered January 26, 1976, against defendant Daniel Suarez, reversed, on the law, and the indictment dismissed.

Judgment, Supreme Court, New York County, rendered January 27, 1976, against defendant Jarmen Midwell, reversed, on the law, and the indictment dismissed.

Judgment, Supreme Court, New York County, rendered January 26, 1976, against defendant Gloria Arnaldi, affirmed, without prejudice to a motion for resentencing.